UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDY JUNIOR ALBA CANALS,

               Petitioner,

- against -

THOMAS DECKER et al.,

               Respondents.

19cv3891 (JGK)

MEMORANDUM OPINION AND ORDER

---

JOHN G. KOELTL, District Judge:

The petitioner, Andy Junior Alba Canals -- a lawful permanent resident of this country -- brings this petition for a writ of habeas corpus against the respondents: Thomas Decker,[1] Kevin McAleenan,[2] and William Barr.[3] The petitioner argues that a bond hearing is required by the due process clause of the Constitution because (1) the length of time between the conviction that his removal is based upon and the commencement of removal proceedings was unreasonable and (2) he has been detained without a bond hearing for an unreasonable length of time.

For the following reasons, the petition for a writ of habeas corpus is **denied.**

---

[1] In his official capacity as New York Field Office Director for U.S. Immigration and Customs Enforcement.

[2] In his official capacity as Acting Secretary of the U.S. Department of Homeland Security.

[3] In his official capacity as the Attorney General of the United States.

I.

The petitioner Andy Junior Alba Canals is a 37-year-old lawful permanent resident of the United States. (Am. Pet. at 1 & ¶ 1.) He is from the Dominican Republic but has lived in the United States since he was 15 years old. (Id. ¶¶ 1, 18.)

On October 7, 1998, two years after he was admitted to the United States, the petitioner was arrested and charged with robbery in the first degree, burglary in the first degree, and criminal possession of stolen property in the fifth degree. (Id. ¶¶ 2, 21; Paoli Decl. ¶¶ 3-5.) He was 17 years old at the time. (Am. Pet. ¶¶ 2, 21; Paoli Decl. ¶¶ 3-5.) The petitioner pleaded guilty to burglary in the first degree on June 10, 1999 in the Supreme Court of the State of New York, New York County, and was sentenced to a five-year prison sentence. (Am. Pet. ¶¶ 2, 21; Paoli Decl. ¶ 5.) On August 30, 1999, the petitioner was arrested by the New York City Police Department ("NYPD") and charged with criminal possession of marijuana in the fifth degree. (Paoli Decl. ¶ 6.) On April 19, 2000, the petitioner was again arrested by the NYPD, this time for criminal sale of marijuana in the fourth degree and criminal possession of marijuana in the fifth degree. (Id. ¶ 7.) Both the August 30, 1999 and April 19, 2000 marijuana charges were dismissed in January 2001 due to a conviction in an unrelated case. (Id.)

2

On April 25, 2001, while the petitioner was serving his criminal sentence for burglary, the Immigration and Naturalization Service ("INS") served the petitioner with a Notice to Appear for removal proceedings, charging him as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. (Id. ¶ 8.) On September 5, 2001, an Immigration Judge ("IJ") terminated removal proceedings without prejudice because the petitioner's burglary conviction -- the basis for his removability from the United States -- was on direct appeal. (Id. ¶ 10.) The petitioner's conviction was affirmed by the New York State Supreme Court, Appellate Division, First Department, on March 10, 2005. (Id. ¶ 12.)

The petitioner was released from imprisonment and placed on parole on September 22, 2004. (Id. ¶ 11.) Thereafter, the petitioner left New York without providing notice to his parole officer. (Id. ¶ 13; Am. Pet. ¶ 21.) On October 29, 2006, the petitioner was arrested by the Boston, Massachusetts Police Department and subsequently charged with being a fugitive from justice on a court warrant. (Paoli Decl. ¶ 16.) That case was dismissed on November 3, 2006 when the Massachusetts authorities turned the petitioner over to New York authorities on the parole warrant. (Id.)

On August 24, 2010, the petitioner was arrested by the NYPD and charged with operating a motor vehicle while impaired by

3

drugs and with unlawful possession of marijuana. (Id. ¶ 21.) On August 25, 2010, the petitioner pleaded guilty in the Criminal Court of the City of New York, Queens County, to operating a motor vehicle while impaired by drugs. (Id.) The petitioner was sentenced to a one-year conditional discharge, fined $500, referred to a program related to drinking and driving, and had his license suspended for six months. (Id.)

On November 29, 2011, the petitioner was arrested in Massachusetts and charged with assault and battery with a dangerous weapon. (Id. ¶ 22.) Although those charges were subsequently dismissed, on September 25, 2013, the petitioner entered an admission of sufficient facts to support a finding of guilt for assault and battery as well as for witness intimidation. (Id.; Pet.'s Reply at 2-3.)

On June 24, 2015, the petitioner filed an Application for Naturalization with U.S. Citizenship and Immigration Services ("USCIS"). (Paoli Decl. ¶ 24.) On June 28, 2017, USCIS denied that application on the basis that the petitioner's conviction for burglary was an aggravated felony, and he was barred as a matter of law from establishing the requisite good moral character for naturalization. (Id.) On July 29, 2017, USCIS referred the petitioner's case to United States Immigration and Customs Enforcement ("ICE"). (Id.)

On March 19, 2019, ICE arrested the petitioner for purposes of placing him into removal proceedings. (Id. ¶ 26.) On that date, ICE served the petitioner with a Notice to Appear, charging him as removable pursuant to (1) Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as identified in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F); and (2) INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien who has been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed. (Paoli Decl. ¶ 26; see also Gov't Return, Ex. 3.)

On March 19, 2019, based on his criminal history, ICE determined that the petitioner was subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c), and so informed him. (Paoli Decl. ¶ 26.) The next day, on March 20, 2019, ICE commenced removal proceedings against the petitioner. (Id. ¶ 27.)

On April 1, 2019, the petitioner appeared in person with counsel before an IJ for an initial hearing. (Id. ¶ 28.) Counsel for the petitioner requested an adjournment to allow counsel time to prepare the case. (Id.) The IJ granted that request and adjourned the case to May 1, 2019. (Id.)

5

On May 1, 2019, the petitioner appeared for another hearing before the IJ. (Id. ¶ 29.) The petitioner filed a motion to terminate the removal proceedings, arguing that his burglary conviction was neither an aggravated felony nor a crime of moral turpitude. (Id.) The IJ set a briefing schedule and set another rehearing for approximately six weeks later, June 17, 2019. (Id.) At the June 17 hearing, the IJ denied the petitioner's motion to terminate the removal proceeding and sustained the charges of removability filed in the Notice to Appear. (Id.)

On May 1, 2019, the petitioner filed his habeas petition in this Court under 28 U.S.C. § 2241. On May 28, 2019, the petitioner filed an amended habeas petition.

**II.**

The petitioner challenges his current immigration detention as unlawful and seeks an Order from this Court requiring ICE to release him immediately or provide him with a bond hearing. The petitioner asserts two as-applied constitutional challenges to his detention. First, he argues that § 1226(c) is unconstitutional as applied to him because "[i]t has been more than twelve years since [he] was released from criminal custody, for a crime [he] committed over twenty years ago." (Am. Pet. ¶¶ 47, 58-60.) Second, the petitioner argues that application of § 1226(c) to him violates due process because his detention

6

"will soon become unconstitutionally prolonged." (Id. ¶¶ 63-66.)

**A.**

Federal immigration law authorizes the Department of Homeland Security to arrest and initially detain an alien who has entered the United States and is believed to be removable. 8 U.S.C. § 1226(a); see also Lora v. Shanahan, 804 F.3d 601, 608-09 (2d Cir. 2015), vacated 138 S. Ct. 1260 (2018). Certain classes of aliens who have committed certain crimes are subject to mandatory detention and may not, under the text of § 1226(c), be released until the removal proceedings conclude. Nielsen v. Preap, 139 S. Ct. 954, 960 (2018).

The petitioner argues that § 1226(c), as applied to him, is unconstitutional because of the length of time between his removable offenses and the commencement of removal proceedings. The petitioner initially argued that he was being removed based on his burglary charge, and that it has been 12 years since he was released from custody for that charge and over 20 years since he was initially charged. However, the Government responded that the petitioner has a more extensive criminal history including operating a motor vehicle while impaired by drugs in 2010 and an admission to facts supporting a finding of

guilt for assault and battery as well as for witness intimidation in 2013.[4]

Section 1226(c) is not unconstitutional as applied to the petitioner in this case. Section 1226(c) was enacted from the concern that deportable aliens, who have been convicted of various offenses, and who are not detained, will continue to commit offenses and will fail to appear for their removal proceedings. Preap, 139 S. Ct. at 960. The petitioner in this case has in fact continued to commit offenses after his initial burglary conviction in 1998, with additional offenses in 2010 and 2013. And the incentive to flee to avoid the removal proceedings remains.

Section 1226(c) does not set out a time limit within which the Government must initiate removal proceedings following an alien's release from custody, and the Supreme Court has ruled that no such time limit can be read into the statute. Id. at 964 (holding that the "when . . . released" clause in § 1226(c) does not preclude a delay between an alien's release from criminal custody and his detention under § 1226(c)).

---

[4] The petitioner does not dispute that an admission to sufficient facts in Massachusetts is equivalent to a conviction for immigration purposes. Commonwealth v. Villalobos, 777 N.E.2d 116, 121 (2002).

8

There is no basis to conclude that there is any talismanic test that renders older convictions irrelevant for purposes of applying § 1226(c) such that they no longer support the concerns that led Congress to adopt § 1226(c). There is no question that the immigration authorities could have commenced removal proceedings against the petitioner in March 2005, after his burglary conviction was affirmed. The petitioner has no valid complaint that the remand provision that would have applied to him in 2005 has only been applied to him in 2019.

To the extent that the petitioner complains that the immigration authorities could have reinstated removal proceedings at an earlier time, the petitioner has no claim on that basis. See, e.g., Arostegui v. Holder, 368 F. App'x 169, 171 (2d Cir. 2010) ("Arostegui fails to allege that he suffered any prejudice. Instead, this delay allowed him nearly five additional years in this country. . . . Accordingly, we conclude that any delay in initiating removal proceedings did not violate Arostegui's due process rights."); Vang v. Gonzales, 237 F. App'x 24, 31 (6th Cir. 2007) (fourteen-year delay did not violate due process).

Accordingly, the petitioner is not entitled to a bail hearing based on the gap of time between the burglary offense on which his removal is based and the Government's commencement of the recent round of removal proceedings.

9

**B.**

The petitioner also argues that he is entitled to a bail hearing due to the length of time he has been detained.

The Supreme Court has held time and again that detention during removal proceedings is constitutional. Demore v. Kim, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); see also Jennings v. Rodriguez, 138 S. Ct. 830, 857 (Thomas, J., concurring) ("This Court has never held that detention during removal proceedings is unconstitutional. To the contrary, this Court has repeatedly recognized the constitutionality of that practice."); Reno v. Flores, 507 U.S. 292, 306 (1993) ("Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings."); Carlson v. Landon, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of th[e] deportation procedure.").

However, "there must be some procedural safeguard in place for immigrants detained for months without a hearing." Lora, 804 F.3d at 614; see also Demore, 538 U.S. at 513 (holding Congress "may require that [noncitizens held under § 1226(c)] be detained for the brief period necessary for their removal proceedings" (emphasis added)). The assumption behind mandatory detention under § 1226(c) is that it will be for the brief period required to remove an alien who has committed certain

10

specified offenses.  Thus, where there has been a prolonged mandatory detention of an alien under 8 U.S.C. § 1226(c), without access to a bond hearing, federal courts have found that the alien's Fifth Amendment Due Process rights were violated. See, e.g., Sajous v. Decker, No. 18cv2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018); see also Demore, 538 U.S. at 513; Zadvydas v. Davis, 533 U.S. 678, 682 (2001).  In such cases, federal courts have the authority to order that the petitioner be released from detention unless the alien is provided with an individualized bond hearing.  Cabral v. Decker, 331 F. Supp. 3d 255, 260 (S.D.N.Y. 2018); Hernandez v. Decker, No. 18cv5026, 2018 WL 3579108, at *8 (S.D.N.Y. July 25, 2018); Frederic v. Edwards, No. 18cv5540, Dkt. No. 13 (S.D.N.Y. July 19, 2018).

Courts in this District generally apply a case-by-case approach to examine each individual's detention circumstances to determine whether they have become "unreasonable or unjustified." Demore, 538 U.S. 510, 532 (Kennedy, J., concurring) ("[T]he Due Process Clause prohibits arbitrary deprivations of liberty[; thus] a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (emphasis added)); Zadvydas, 533 U.S. at 684-86.

11

A number of factors bear on whether a detention has become unreasonable or unjustified. These factors include: (1) the length of time that the petitioner has been detained, (2) the party responsible for the delay, (3) whether the petitioner has asserted defenses to removal, (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable, (5) whether the detention facility is meaningfully different from a penal institution for criminal detention, (6) the nature of the crimes committed by the petitioner, and (7) whether the petitioner's detention is near conclusion. See, e.g., Cabral, 331 F. Supp. 3d at 260; see also Sajous, 2018 WL 2357266, at *10-11; Vallejo v. Decker, No. 18cv5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018); Hernandez, 2018 WL 3579108, at *7.

In this case, the Court need not examine each factor because the petitioner's request for a bond hearing is premature. The petitioner has only been detained for approximately four-and-one-half months, which is a shorter than the length of time courts in this District generally have found to be violative of due process. See, e.g., Gordon v. Shanahan, No. 15cv261, 2015 WL 1176706, at *3 (S.D.N.Y. Mar. 13, 2015) (eight months); Faure v. Decker, No. 15cv5128, 2015 WL 6143801, at *1 (S.D.N.Y. Oct. 19, 2015) (detention would exceed nine months by the petitioner's next hearing). And, at least some of

the delay is attributable to the petitioner, who requested an adjournment of his removal proceedings.

The petitioner relies heavily on this Court's holding in Cabral, 331 F. Supp. 3d 255. However, Cabral is distinguishable. In Cabral the petitioner did not appear even to have requested an adjournment in his removal proceedings, he had already been detained for over seven months without a bond hearing, and by his next hearing he would have been detained for over nine months. Id. at 261.

Accordingly, the petitioner's continuing detention without a bond hearing has not yet become unreasonable. Therefore, the petition for a bond hearing is **denied**.[5]

---

[5] At the argument of the petition, petitioner's counsel suggested that, if the Court were inclined to deny the petition, the Court should simply hold the petition until sufficient time had passed to make the petitioner's detention unreasonable. That is not a reasonable request. It is up to the petitioner to file a petition demonstrating that his continued detention without a bond hearing is unreasonable. The respondent would then have the opportunity to oppose that fact-specific showing.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.[6] The petitioner's request for a writ of habeas corpus is **denied**. The petition is dismissed and the Clerk is directed to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**August 9, 2019**

John G. Koeltl
United States District Judge

---

[6] It is unnecessary to consider what procedural safeguards should apply at a bond hearing under 8 U.S.C. § 1226(c). See Cabral, 331 F. Supp. 3d at 262 n.6.